UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------- x
MARK ROTHSCHILD, on behalf of himself    :
and all others similarly situated,    :
    :            **OPINION AND ORDER**
    :            19-cv-05240 (DLI)(RLM)
                    Plaintiff,    :
    :
    -against-    :
    :
GENERAL MOTORS LLC,    :
    :
                    Defendant.    :
-------------------------------------------------------- x

**DORA L. IRIZARRY, United States District Judge:**

Plaintiff Mark Rothschild ("Plaintiff") brings this putative class action, pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d)(2), against General Motors LLC ("Defendant"), alleging that Defendant manufactured defective vehicles, which it sold and leased despite its awareness of the defect and without disclosing the defect to consumers.  On February 10, 2020, Plaintiff filed an Amended Complaint.  *See*, Am. Compl., Docket ("Dkt.") Entry No. 13.

Defendant moved to dismiss the Amended Complaint based on lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure ("Fed. R. Civ. P.") 12(b)(1), application of the "first-filed" rule, failure to state a claim under Fed. R. Civ. P. 12(b)(6), and lack of personal jurisdiction with respect to the putative nationwide class claims pursuant to Fed. R. Civ. P. 12(b)(1).  *See*, Notice of Mot., Dkt. Entry No. 15; Mem. of Law in Supp. of Def. General Motors LLC's Mot. to Dismiss Am. Compl. ("Def. Mem."), Dkt. Entry No. 15-1; Decl. of Jacqueline Seidel in Supp. of Def. General Motors LLC's Mot. to Dismiss ("Seidel Decl."), Dkt. Entry No. 15-2; Decl. of Donald B. Weaver ("Weaver Decl."), Dkt. Entry No. 15-3.  Plaintiff opposed the motion.  *See*, Pl.'s Mem. of Law in Opp'n to Def.'s Mot. to Dismiss ("Pl. Opp'n"), Dkt. Entry No. 16.  Defendant replied.  *See*, Reply Mem. in Supp. of Def. General Motors LLC's Mot. to Dismiss

("Def. Reply"), Dkt. Entry No. 17.  For the reasons set forth below, Defendant's motion is granted in part and denied in part.

## BACKGROUND

The following allegations of fact are taken from the Amended Complaint, as well as documents that are incorporated by reference, and are accepted as true for purposes of this decision.  *See*, *DeJesus v. HF Mgmt. Servs., LLC*, 726 F.3d 85, 87 (2d Cir. 2013).  In support of its motion to dismiss, Defendant submitted copies of the warranty and special coverage adjustment at issue in this case.  *See*, Seidel Decl., Ex. D; Weaver Decl., Ex. A.  The Court considers these exhibits because they are incorporated by reference in the Amended Complaint.  *See*, *L-7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419, 422 (2d Cir. 2011) (A complaint is "deemed to include any written instrument attached to it as an exhibit, materials incorporated in it by reference, and documents that, although not incorporated by reference, are integral to the complaint.") (internal quotation marks and citations omitted); *See also*, *Freidman v. Gen. Motors Corp.*, 2009 WL 454252, at *3, n.46 (S.D.N.Y. Feb. 23, 2009) (considering contractual warranties as integral to the complaint in deciding motion to dismiss).

## I.    Allegations Relating to Putative Class Members

Defendant is a Delaware limited liability company that designs, manufactures, and sells automobiles throughout the United States, including in the State of New York, under the brand names "Chevrolet," "GMC," and "Cadillac."  Am. Compl. ¶ 19.  Defendant allegedly manufactured, sold, and leased thousands of vehicles equipped with a defective electronic throttle control and/or accelerator pedal position sensor (the "Defective Components") "that cause the vehicles to abruptly lose power, often at interstate highway speeds."  *Id.* at ¶ 2. The "significant and abrupt reduction of power" is accompanied by a warning on the dashboard that reads "Engine

Power is Reduced" (the "Defect"). *Id.* Drivers have reported that the Defect has caused accidents, and, therefore, it presents a "major safety concern[.]" *Id.* at ¶ 6. The Defect affects three categories of vehicles (the "Vehicles"): (1) the Chevrolet Malibu, model years 2016 to 2018; (2) the Buick LaCrosse, model years 2017 to 2018; and (3) the Buick Regal, model year 2018. *Id.* at ¶¶ 2, 23.

Defendant purportedly was put on notice of the Defect through its "own knowledge about the material, design, and manufacture of the [Defective Components]" as well as direct and indirect feedback from its dealers, its customers, complaints made on web forums and social media, and complaints reported to the National Highway Transportation Safety Administration ("NHTSA") and in the news. *Id.* at ¶¶ 25-33. Nonetheless, Defendant allegedly "actively concealed and/or failed to notify the public of the existence and nature of the [D]efect[.]" *Id.* at ¶ 15.

Defendant is claimed to have initiated "Special Coverage Adjustment N182188250" (the "Special Coverage Adjustment"), which is a "silent recall" that permits only some owners of the Vehicles who already have experienced the Defect while driving to have the Defective Components replaced. *Id.* at ¶¶ 8, 43. Yet, some Vehicle owners have experienced the Defect even after replacing the Defective Components. *Id.* at ¶¶ 11, 46. Moreover, the Special Coverage Adjustment does not cover repairs of Vehicles that have the Defective Components but have not experienced the Defect. *Id.* at ¶¶ 8, 43. Defendant allegedly has instructed its dealerships not to repair any Vehicles that have not experienced the Defect, and owners of the Vehicles have been "turned away from receiving repairs[.]" *Id.* at ¶¶ 9, 44. Accordingly, there are "likely thousands of" Vehicles that are at risk of experiencing the Defect, which presents a "continuing safety risk[.]" *Id.* at ¶¶ 10, 45. Thus, it is claimed that the repair offered under the Special Coverage Adjustment is inadequate to prevent the Defect from recurring. *Id.* at ¶¶ 11, 46.

## II.    Plaintiff's Allegations

On September 5, 2017, Plaintiff purchased a new 2017 Chevrolet Malibu.  *Id.* at ¶ 48.  On March 19, 2018, Plaintiff experienced the Defect while he was driving at "highway speed."  *Id.* at ¶ 50.  Plaintiff brought his vehicle to the Chevrolet dealership where he had purchased it, and the Defective Components were replaced free of charge under the warranty provided by Defendant (the "Warranty").  *Id.* at ¶ 51.

Approximately one year later, on March 21, 2019, Plaintiff experienced the Defect again.  *Id.* at ¶ 52.  This time, however, the dealership refused to cover the costs of repairing Plaintiff's vehicle, as it no longer was covered by the Warranty.  *Id.* at ¶¶ 34, 52-53.  Plaintiff initiated a complaint with Defendant, but it "provided no meaningful assistance in addressing the [D]efect or otherwise honoring [its] warranty."  *Id.* at ¶ 53.  Accordingly, Plaintiff brought his vehicle to an auto repair shop and paid $185.03 to repair his vehicle.  *Id.* at ¶ 54.  Plaintiff experienced the Defect again on July 19, 2019, and he paid an auto repair shop to repair his vehicle again.  *Id.* at ¶ 55.  Plaintiff "spent a significant amount of time attempting to have his vehicle repaired[,]" and Defendant never reimbursed him for his lost time or the out-of-pocket expenses he incurred to repair the Defect.  *Id.* at ¶¶ 56-57.

## III.    Procedural Background

On May 24, 2019, Plaintiff's counsel commenced a putative nationwide class action in the United States District Court of Maryland, asserting similar claims against Defendant based on the same Defect in Chevrolet Malibu vehicles, model years 2016 to 2017.  *See*, *Hutchinson v. General Motors LLC*, No. 19-cv-1551 (D. MD.) (May 24, 2019).  Shortly thereafter, on September 13, 2019, Plaintiff commenced the instant action.  *See*, Compl., Dkt. Entry No. 1.  On January 13, 2020, Defendant moved to dismiss.  *See*, Dkt. Entry No. 9.  In response, with Defendant's consent,

Plaintiff filed an Amended Complaint on February 10, 2020, and Defendant's initial motion to dismiss was terminated as moot. *See*, Dkt. Entry Nos. 10, 13. The instant motion to dismiss followed.

Plaintiff asserts causes of action for breach of the Warranty, violation of the Magnuson-Moss Warranty Act 15 U.S.C. § 2301, *et seq.* ("MMWA"), unfair and deceptive trade practices in violation of New York General Business Law § 349, *et seq.* ("GBL § 349"), and unjust enrichment. Am. Compl. ¶¶ 75-95, 100-123. Plaintiff seeks actual, punitive, and statutory damages, as well as injunctive and declaratory relief. *Id.* at ¶¶ 96-99 and at WHEREFORE Clause, ¶¶ (b)-(f). Defendant again seeks dismissal contending that: (1) the Court lacks subject matter jurisdiction over this action because Plaintiff's claims are moot and Plaintiff lacks standing; (2) pursuant to the "first-filed" rule, under which an earlier-filed case involving similar parties and issues has priority, this action should be dismissed in favor of the earlier-filed *Hutchinson* case; and (3) Plaintiff fails to state a claim for which relief can be granted. Defendant further seeks dismissal of the putative nationwide class claims for lack of personal jurisdiction.

## LEGAL STANDARDS

### I.     Fed. R. Civ. P. 12(b)(1): Subject Matter Jurisdiction

Under Fed. R. Civ. P. 12(b)(1), a federal court must dismiss a claim when it lacks jurisdiction over the subject matter of the action. *See*, Fed. R. Civ. P. 12(b)(1); *See also*, *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000) ("A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it.") (citation omitted). The party asserting subject matter jurisdiction has the burden to prove the court's jurisdiction by a preponderance of the evidence. *See*, *Vailette v. Lindsay*, 2014 WL 4101513, at *3 (E.D.N.Y. Aug. 18, 2014) (citations omitted).

In deciding a motion to dismiss for lack of subject matter jurisdiction, the court must assume all factual allegations in the complaint are true and draw all reasonable inferences in favor of the non-moving party.  *See*, *C.K. v. Bd. of Educ. of the Westhampton Beach Sch. Dist.*, 185 F. Supp.3d 317, 324 (E.D.N.Y. 2016) (citations omitted).  Moreover, the court may refer to evidence outside the pleadings, such as affidavits, to resolve the jurisdictional issue.  *See*, *Forbes v. State Univ. of New York at Stony Brook*, 259 F. Supp.2d 227, 231-32 (E.D.N.Y. 2003) (citations omitted).

## II.    First-Filed Rule

Pursuant to the first-filed rule, "where there are two competing lawsuits, the first suit should have priority."  *New York Marine & Gen. Ins. Co. v. Lafarge N. Am., Inc.*, 599 F.3d 102, 112 (2d Cir. 2010) (internal quotation marks, citation, and alteration omitted).  The rule "promotes 'wise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation[.]'"  *Wyler-Wittenberg v. MetLife Home Loans, Inc.*, 899 F. Supp.2d 235, 244 (E.D.N.Y. 2012) (quoting *Kerotest Mfg. Co. v. C–O–Two Fire Equipment Co.*, 342 U.S. 180, 183 (1952)).  Application of the rule requires that the first and subsequently filed case be "substantially similar, but they need not be identical."  *Wells Fargo Advisors, L.L.C. v. Tucker*, 195 F. Supp.3d 543, 552 (S.D.N.Y. 2016), *aff'd sub nom. Wells Fargo Advisors, LLC v. Sappington*, 884 F.3d 392 (2d Cir. 2018) (citations omitted).

In considering whether the first-filed rule applies, the court "must carefully consider whether the suits are, in fact, duplicative, and must not . . . be swayed by a rough resemblance between the two suits without assuring itself that beyond the resemblance already noted, the claims asserted in both suits are also the same."  *Quinn v. Walgreen Co.*, 958 F. Supp.2d 533, 539 (S.D.N.Y. 2013) (internal quotation marks and citation omitted).  Moreover, while "the rule creates

a general presumption that a first-filed suit has priority, that presumption is not applied in a rigid or mechanical way." *Id.* (internal quotation marks and citations omitted). Rather, the court is "required to consider the equities of the situation when exercising its discretion." *Id.* (internal quotation marks and citation omitted); *Wyler-Wittenberg*, 899 F. Supp.2d at 247 (citation omitted).

## III.    Fed R. Civ. P. 12(b)(6):  Failure to State a Claim

To survive a motion to dismiss for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6), a complaint must "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The plausibility standard "does not require 'detailed factual allegations,' but it demands more than . . . unadorned, the-defendant-unlawfully-harmed-me accusation[s]." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555).

In deciding a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), as in deciding a motion to dismiss under Fed. R. Civ. P. 12(b)(1), the court accepts as true all well pled factual allegations and draws all reasonable inferences in the plaintiff's favor. *LaFaro v. N.Y. Cardiothoracic Grp., PLLC*, 570 F.3d 471, 475 (2d Cir. 2009) (citations omitted). Nevertheless, "threadbare recitals of the elements of a cause of action" that are supported by "conclusory" statements and mere speculation are inadequate and subject to dismissal. *Chavis v. Chappius*, 618 F.3d 162, 170 (2d Cir. 2010) (internal quotation marks and citation omitted); *See also*, *Iqbal*, 556 U.S. at 678 ("[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.").

## IV.    Fed. R. Civ. P. 12(b)(2):  Personal Jurisdiction

Personal jurisdiction is the "court's power to exercise control over the parties." *Cohen v. Facebook, Inc.*, 252 F. Supp.3d 140, 151 (E.D.N.Y. 2017), *aff'd in part, dismissed in part sub nom. Force v. Facebook, Inc.*, 934 F.3d 53 (2d Cir. 2019) (internal quotation marks and citation

omitted).  To survive a motion to dismiss for lack of personal jurisdiction, "a plaintiff must make a *prima facie* showing that jurisdiction exists." *Id.* (internal quotation marks and citation omitted).

Courts may exercise two types of personal jurisdiction over corporate defendants:  specific and general jurisdiction.  *Brown v. Lockheed Martin Corp.*, 814 F.3d 619, 624 (2d Cir. 2016). Specific jurisdiction is available when the cause of action "arises out of the defendant's activities in a state[,]" whereas general jurisdiction "permits a court to adjudicate any cause of action against the corporate defendant, wherever arising, and whoever the plaintiff." *Id.* (citations omitted).

## DISCUSSION

## I.     Defendant's Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(1)

### A.     Mootness

Defendant seeks to dismiss the Amended Complaint for lack of subject matter jurisdiction on the ground that the Special Coverage Adjustment moots Plaintiff's claims.  *See*, Def. Mem., 3-9.  Federal courts are courts of limited jurisdiction and may adjudicate only actual cases and controversies.  *See*, U.S. Const. art. III, § 1.  Thus, federal courts lack subject matter jurisdiction over an action where the controversy is moot.  *See*, *Doyle v. Midland Credit Mgmt., Inc.*, 722 F.3d 78, 80 (2d Cir. 2013) (citation omitted).  A case is moot "'when the parties lack a legally cognizable interest in the outcome[,]'" meaning that they lack "'a personal stake in the litigation.'"  *Ward v. Bank of New York*, 455 F. Supp.2d 262, 266 (S.D.N.Y. 2006) (quoting *Fox v. Bd. of Trustees of State Univ. of New York*, 42 F.3d 135, 140 (2d Cir. 1994)).  Accordingly, a case is moot if the defendant offers the plaintiff "the maximum recovery available[,]" because, at that point, "there is no justification for taking the time of the court and the defendant in the pursuit of miniscule individual claims which defendant has more than satisfied."  *Id.* at 267 (internal quotation marks and citations omitted).  However, if "the offer does not cover all potential relief," the case is not

moot. *Id.* (citations omitted). A defendant seeking to demonstrate mootness bears a "heavy" burden. *O'Neill v. Standard Homeopathic Co.*, 346 F. Supp.3d 511, 522 (S.D.N.Y. 2018) (internal quotation marks and citation omitted).

Defendant contends that Plaintiff's claims are moot because the Special Coverage Adjustment "is sufficient not only to redress Plaintiff's alleged economic losses, but also provides prospective relief against the possibility of future losses[.]" Def. Mem., 5. The Special Coverage Adjustment covers the cost of repairs for the Defect "for a period of 10 years or 150,000 miles" and reimburses owners of affected Vehicles for "reasonable and customary" out-of-pocket expenses incurred for repairing the Defect. *See,* Weaver Decl., Ex. A (Special Coverage Adjustment), 1. The repair offered under the Special Coverage Adjustment is replacement of the Defective Components. *Id.*

Although the Special Coverage Adjustment offers reimbursement and repairs for owners of the Vehicles who have experienced the Defect, it does not offer the complete remedy that Plaintiff seeks. It does not provide repairs or reimbursement for all Vehicles, regardless of whether they have experienced the Defect, or a recall of the Vehicles, which is the declaratory and injunctive relief Plaintiff seeks.[1] As such, dismissal is not warranted on mootness grounds. *See,* *Reynolds v. Lifewatch, Inc.*, 136 F. Supp.3d 503, 513-14 (S.D.N.Y. 2015) (denying motion to dismiss plaintiff's claim as moot where defendants had initiated refund campaign because plaintiff sought not just damages but also injunctive and declaratory relief); *See also,* *Leonard v. Abbott Labs., Inc.*, 2012 WL 764199, at *26 (E.D.N.Y. Mar. 5, 2012) (holding that defendant's reimbursement offer was insufficient to moot plaintiffs' claims because it did not offer the

---

[1] Defendant contends that Plaintiff is not entitled to injunctive and declaratory relief. *See,* Def. Mem., 6-8, 18-21; Def. Reply, 1-2. However, Defendant's contention requires an inquiry as to the merits of Plaintiff's case separate from the Court's analysis of mootness.

complete remedy they sought).

Additionally, GBL § 349 provides for a minimum amount of statutory damages. *See*, N.Y. Gen. Bus. Law § 349(h) ("[A]ny person who has been injured by reason of any violation of this section may bring an action . . . to recover his actual damages or fifty dollars, whichever is greater[.]").  Thus, if Plaintiff is able to prove injury, but his damages are "less than the statutory minimum, [he] would still be entitled to the minimum amount of statutory damages." *O'Neill*, 346 F. Supp.3d at 523 (internal quotation marks and citation omitted).  In that instance, Plaintiff's damages would not be mooted. *Id.*

Plaintiff further alleges that he and "numerous" putative class members have experienced the Defect even after Defendant replaced the Defective Components. *See*, Am. Compl. ¶¶ 11, 46. Accordingly, to the extent the Special Coverage Adjustment is not fully effective, Plaintiff and putative class members have "indisputably live claims." *See*, *In re: Gen. Motors LLC Ignition Switch Litig.*, 2016 WL 3920353, at *40 (S.D.N.Y. July 15, 2016) (declining to dismiss case as moot where relief offered by defendant had left some plaintiffs with defective vehicles).

Ultimately, Plaintiff's decision to forego the relief provided by the Special Coverage Adjustment may be "questionable," considering the number of cases where courts have denied class certification because a refund program provided a superior method of compensating putative class members than a class action. *See*, *Leonard*, 2012 WL 764199, at *27.  Nonetheless, Plaintiff is not barred from foregoing compensation through a voluntary reimbursement program to pursue his claims in a class action. *Id.* at * 26.

Defendant's reliance on *Strama v. Toyota Motor Sales, U.S.A.*, 2016 WL 561936 (N.D. Ill. Feb. 12, 2016) is misplaced. *See*, Def. Mem., 5-6.  In *Strama*, the court dismissed the plaintiffs' claim for lack of subject matter jurisdiction where the defendant vehicle manufacturer had

implemented a warranty enhancement program that provided repair services and reimbursement of costs to customers whose vehicles had the defect at issue. *Id.* at *2. However, dismissal was not based on mootness, but rather because plaintiffs had raised only "hypothetical and speculative concerns" instead of alleging actual harm. *Id.* at *3. Thus, the court in *Strama* found that the case was not ripe, specifically noting that it was not basing its decision on mootness grounds. *Id.* ("The instant action involves the ripeness doctrine and does not involve an offer of judgment and the mootness doctrine.").

The other three cases on which Defendant relies are inapposite because in these cases, unlike here, the defendants had initiated recalls of the defective vehicles, thereby rendering the plaintiffs' request for injunctive relief in the form of a court-ordered recall moot. In *Hadley v. Chrysler Group., LLC*, 624 Fed.Appx. 374 (6th Cir. 2015), the court held that the plaintiffs' claims for a declaratory judgment and injunctive relief were moot because the defendant already had acknowledged the defect and repaired the plaintiffs' vehicles. *Id.* at 379. Similarly, in *Cheng v. BMW of North America, LLC*, 2013 WL 3940815 (C.D. Cal. July 26, 2013), the court dismissed the case as prudentially moot because the defendants' recall provided the plaintiff with the injunctive relief he sought, and the plaintiff specifically had disavowed any request for monetary damages. *Id.* at *4. Finally, in *Winzler v. Toyota Motor Sales U.S.A., Inc.*, 681 F.3d 1208 (10th Cir. 2012), the court held that the defendant's implementation of a nationwide vehicle recall, which was overseen by the NHTSA, rendered plaintiff's action seeking equitable relief prudentially moot, as there was "no reason why the courts should duplicate" the efforts of "coordinate branches of government," and because the recall ensured that plaintiff received "precisely the relief she [sought]." *Id.* at 1209-11. Here, as set forth above, Plaintiff seeks monetary and statutory damages in addition to injunctive and declaratory relief and, thus, Defendant does not offer the full remedy

that Plaintiff seeks.

For the foregoing reasons, Defendant's motion to dismiss for lack of subject matter jurisdiction on mootness grounds is denied.

### B.    Standing

Defendant asserts that Plaintiff lacks standing because he has failed to establish that he incurred an injury or that there is a real threat of future injury. A motion to dismiss for lack of standing challenges the subject matter jurisdiction of a federal court. *SM Kids, LLC v. Google LLC*, 963 F.3d 206, 210 (2d Cir. 2020) (citation omitted).

To establish standing, a plaintiff must satisfy three requirements: "(1) injury-in-fact—an injury that is 'concrete and particularized' and is 'actual or imminent, not conjectural or hypothetical'; (2) an injury that is fairly traceable to the challenged action; and (3) an injury that will likely be redressed by a favorable ruling of the court." *Berkson v. Gogo LLC*, 97 F. Supp.3d 359, 405 (E.D.N.Y. 2015) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992)). The "injury-in-fact" requirement is a "low threshold[.]" *John v. Whole Foods Mkt. Grp., Inc.*, 858 F.3d 732, 736 (2d Cir. 2017) (internal quotation marks and citations omitted). Redressability is the "non-speculative likelihood that the injury can be remedied by the requested relief." *W.R. Huff Asset Mgmt. Co., LLC v. Deloitte & Touche LLP*, 549 F.3d 100, 106-07 (2d Cir. 2008) (citation omitted). A plaintiff who seeks to bring a class action must show that he personally has standing and cannot establish standing based on injuries incurred by the proposed class. *See*, *Catalano v. BMW of N. Am., LLC*, 167 F. Supp.3d 540, 553 (S.D.N.Y. 2016) ("[T]he relevant legal entity for determining whether Article III standing is proper is the named plaintiff(s), not the proposed class.") (citation omitted).

Defendant asserts, for the first time in its reply brief, that Plaintiff fails to establish an

injury-in-fact.  *See*, Def. Reply, 2.  Normally, a court need not consider an argument raised for the first time in a reply brief.  *See*, *Hermes of Paris, Inc. v. Swain*, 867 F.3d 321, 324, n.4 (2d Cir. 2017).  However, because Fed. R. Civ. P. 12(h)(3) permits courts to dismiss a case for lack of subject matter jurisdiction "at any time," and subject matter jurisdiction "can never be forfeited or waived[,]" the Court considers Defendant's argument as to Plaintiff's standing.  *See*, *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 514 (2006) (internal quotation marks and citation omitted); *Hermes of Paris, Inc.*, 867 F.3d at 324, n.4 (considering arguments regarding subject matter jurisdiction that were raised for first time in reply brief); *Volunteers of Am. of W. New York, Inc. v. Rochester Gas & Elec. Corp.*, 2014 WL 3573338, at *3 (W.D.N.Y. July 21, 2014) ("The Court looks with disfavor upon the practice of raising new arguments for the first time in reply briefs, and ordinarily declines to consider such arguments . . . Standing, however, is jurisdictional . . . Because the standing issue goes to a court's subject matter jurisdiction, it can be raised *sua sponte*.") (citations omitted).

Plaintiff alleges that he sustained injuries by:  (1) paying more for his vehicle than he otherwise would have had he known about the Defect; (2) incurring out-of-pocket expenses to repair the Defect; and (3) losing personal time to repair the Defect.  *See*, Am. Compl. ¶¶ 13, 54, 56-57.  As to Plaintiff's allegations of overpaying for his vehicle, the Second Circuit has made clear that "overpaying for a product results in a financial loss constituting a particularized and concrete injury in fact."  *John*, 858 F.3d at 736 (citation omitted).  Plaintiff's allegations that he overpaid for his vehicle due to Defendant's failure to disclose the Defect is sufficient to establish an actual and concrete injury.  *See*, *Cummings v. FCA US LLC*, 401 F. Supp.3d 288, 303-04 (N.D.N.Y. 2019) (holding that plaintiff had standing where she alleged that, based on the defendant's misrepresentations, she had overpaid for a vehicle with a defective transmission).

Defendant's contention that Plaintiff's allegations of overpayment are "neutralized by

[Defendant's] agreement" to replace the Defective Components is without merit. *See*, Def. Reply, 2. As discussed further below, Plaintiff's GBL § 349 claim is premised on the theory that he paid more for his vehicle than he otherwise would have were it not for Defendant's deceptive practices. Thus, Plaintiff at least would be entitled to statutory damages. Accordingly, regardless of whether Defendant replaces the Defective Components, Plaintiff nonetheless has sustained an injury by overpaying for his vehicle, and, therefore, has standing. *See*, *Tomassini v. FCA US LLC*, 326 F.R.D. 375, 385 (N.D.N.Y. 2018), *reconsideration denied*, 2018 WL 5842995 (N.D.N.Y. Nov. 8, 2018) (holding that plaintiffs who had purchased vehicles with defective parts had standing notwithstanding defendant's free replacement of the parts because "allegations that a plaintiff purchased a product at an inflated price as a result of the defendant's deception is a sustainable injury under [GBL §] 349").

Plaintiff's allegation that he paid an auto repair shop $185.03 to replace the Defective Components also is sufficient to establish standing, as "[e]conomic injury suffices as a form of injury-in-fact that meets the first element of standing." *Hughes v. Ester C Co.*, 930 F. Supp.2d 439, 453 (E.D.N.Y. 2013) (citations omitted). Finally, Plaintiff's allegation of lost personal time is a cognizable injury, as "[p]laintiffs may recover for lost personal time under the GBL." *In re Gen. Motors LLC Ignition Switch Litig.*, 339 F. Supp.3d 262, 329 (S.D.N.Y. 2018) (noting that New York courts have "contemplated recovery for lost-time damages in the case of warranty claims[]").

Defendant further challenges Plaintiff's standing to seek declaratory and injunctive relief requiring Defendant to disclose the Defect, recall and repair all Vehicles, and enjoining Defendant from manufacturing and selling or leasing the Vehicles. *See*, Def. Mem., 19. In order to establish standing to pursue such prospective relief, a plaintiff must establish a "'real or immediate threat'

of injury." *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 239 (2d Cir. 2016) (quoting *City of Los Angeles v. Lyons*, 461 U.S. 95, 111-12, (1983)). While "past injuries may provide a basis for standing to seek money damages, they do not confer standing to seek injunctive relief unless the plaintiff can demonstrate that []he is likely to be harmed again in the future in a similar way." *Id.* (citation omitted). Moreover, the plaintiff must establish how "the injury would be prevented by the equitable relief sought." *Marcavage v. City of N.Y.*, 689 F.3d 98, 103 (2d Cir. 2012) (citations omitted).

Defendant contends that Plaintiff fails to plead facts showing that there is "more than a mere possibility[]" that he will experience the Defect in the future. Def. Mem., 19 (internal quotation marks and citation omitted). The Court agrees. While Plaintiff alleges that he experienced the Defect after the Defective Components in his vehicle were repaired, he does not allege that he is likely to experience the Defect again. Nor does Plaintiff allege that he intends to purchase a 2016-2018 Chevrolet Malibu in the future.

Thus, Plaintiff fails to allege a real or immediate threat of future injury. *See*, *Marcavage*, 689 F.3d at 103 (holding that plaintiffs lacked standing to pursue equitable claims where they had not demonstrated a "certainly impending future injury that could be redressed" by the court); *Marino v. Coach, Inc.*, 264 F. Supp.3d 558, 565-66 (S.D.N.Y. 2017) (finding that plaintiffs had not established standing to seek injunctive relief where they had failed to allege that they intended to purchase defendants' products in the future). Moreover, because Plaintiff individually does not have standing to seek declaratory or injunctive relief, he similarly lacks standing to pursue such relief on behalf of the putative class. *See*, *Buonasera v. Honest Co., Inc.*, 208 F. Supp.3d 555, 565 (S.D.N.Y. 2016) (citations omitted). Accordingly, Plaintiff's request for declaratory and injunctive relief is dismissed for lack of subject matter jurisdiction pursuant to Fed. R. Civ. P.

12(b)(1).[2]

## II.    Defendant's Motion to Dismiss Based on the First-Filed Rule

Defendant seeks to dismiss the Amended Complaint under the first-filed rule contending that *Hutchinson* involves the same alleged Defect and a "substantially similar putative nationwide class." Def. Mem., 23. *Hutchinson* asserts claims under the MMWA and the Maryland Consumer Protection Act ("MCPA"), breach of express and implied warranties, and unjust enrichment against Defendant. *See*, Seidel Decl., Ex. C ("*Hutchinson* Compl."). The alleged defect in *Hutchinson* is the same as the Defect here. *Id.* at ¶ 2. However, the subject defective vehicles include only the Chevrolet Malibu, model years 2016 to 2018. *Id.* at ¶ 3.

The issues and parties in this case do not substantially overlap with those in *Hutchinson*. Here, Plaintiff asserts claims under New York law and seeks certification of a New York sub-class. Am. Compl. ¶¶ 1, 21, 58, 87-123. By contrast, the *Hutchinson* plaintiff asserts claims under Maryland law and seeks certification of a Maryland sub-class. *Hutchinson* Compl. ¶¶ 1, 12, 47, 75-110. While both cases also seek certification of a multi-state class, because a nationwide class has not been certified yet, neither the parties nor the issues substantially overlap. *See*, *Quinn*, 958 F. Supp.2d at 539-40 (where first-filed action sought certification of a multi-state class that could potentially encompass consumers from subsequently filed action, first-filed rule did not apply because the nationwide class in first-filed action had not been certified).

Moreover, there are many possibilities at this juncture that could further differentiate the putative classes in each case: Plaintiff may opt-out of the *Hutchinson* action if it is certified; many of the *Hutchinson* putative class members may opt out; the *Hutchinson* proposed class

---

[2] As a result, the Court need not address Defendant's argument that Plaintiff is pre-empted from seeking declaratory and injunctive relief because the decision as to whether to implement a vehicle recall is within the exclusive province of the NHTSA. *See*, Def. Mem., 6-9.

representative may be found inadequate; or *Hutchinson* may settle before a class is certified.  *See*, *Shimon v. Equifax Info. Servs. LLC*, 2018 WL 4906245, at *2 (E.D.N.Y. Oct. 9, 2018) (noting these possibilities as the reason for the court's "skeptic[ism]" regarding whether the first-filed rule is appropriate in putative class actions).  Given any of these scenarios, the parties in this case would have to conduct discovery on at least Plaintiff's individual claims.  *Id.*  Finally, the difference in the subject defective vehicles, namely that the instant action involves three categories of cars, the Chevrolet Malibu, model years 2016 to 2018, the Buick LaCrosse, model years 2017 to 2018, and the Buick Regal, model year 2018, while *Hutchinson* involves only the Chevrolet Malibu, model years 2016 to 2018, weighs against applying the first-filed rule.  *Id.* at *3 (where time periods in putative class definitions did not overlap with those of previously filed case, subsequently filed case was "a particularly poor candidate" for application of the first-filed rule).

For all the foregoing reasons, the first-filed rule does not apply in this case.  Consequently, Defendant's motion to dismiss on this ground is denied.

## III.    Defendant's Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6)

### A.    Breach of Express Warranties

Plaintiff alleges that Defendant breached the Warranty by selling the Vehicles with Defective Components and "failing to provide an adequate and lasting remedy to cure the Defect within a reasonable time[.]" Am. Compl. ¶¶ 89-90.  "To state a claim for breach of express warranty under New York law, a plaintiff must allege (1) the existence of a material statement amounting to a warranty, (2) the buyer's reliance on this warranty as a basis for the contract with the immediate seller, (3) breach of the warranty, and (4) injury to the buyer caused by the breach." *Goldemberg v. Johnson & Johnson Consumer Companies, Inc.*, 8 F. Supp.3d 467, 482 (S.D.N.Y. 2014) (citations omitted).

Here, the Warranty covers repairs of defects occurring during the "warranty period[,]" which "begins on the date the vehicle is first delivered or put in use and ends at the expiration of the coverage period."  Seidel Decl., Ex. D (2017 Chevrolet Limited Warranty), 4.  There are two coverage periods:  (1) "Bumper-to-Bumper Coverage," which covers the "complete vehicle" for three years or 36,000 miles, whichever comes first; and (2) "Powertrain Component Warranty Coverage," which provides coverage for certain components of the vehicle for five years or 60,000 miles, whichever comes first.  *Id.*; *See also*, Am. Compl. ¶ 71.  Repairs made within the warranty period are free of charge.  2017 Chevrolet Limited Warranty, 4

Plaintiff alleges that he experienced the Defect on three occasions, only the first of which was during the warranty period.  *See*, Am. Compl. ¶¶ 50, 52, 55.  With respect to the Defect that occurred during the warranty period, as well as the subsequent occurrences outside the warranty period, Plaintiff fails to plead that Defendant breached the Warranty.

The first time that Plaintiff experienced the Defect, his vehicle had approximately 25,301 miles on the odometer and still was within the three year/36,000-mile Bumper-to-Bumper Coverage period.  *Id.* at ¶ 50.  The dealership repaired Plaintiff's vehicle free of charge, pursuant to the Warranty.  *Id.* at ¶ 51.  According to Plaintiff, the repair simply replaced the Defective Components "with the same defective parts."  *Id.* at ¶ 109.  Plaintiff contends that, by failing to provide an adequate remedy, the Warranty "fail[ed] its essential purpose."  *See*, Pl. Opp'n, 16.

Where a warranty "fails its essential purpose," a plaintiff may pursue other remedies, as if the warranty did not exist.  *See*, *Kraft v. Staten Island Boat Sales, Inc.*, 715 F. Supp.2d 464, 476 (S.D.N.Y. 2010) (citations omitted); U.C.C. § 2-719 (2).  A warranty "fails its essential purpose . . . if the circumstances existing at the time of the agreement have changed so that enforcement of the [warranty] would essentially leave plaintiff with no remedy at all."  *Kraft*, 715 F. Supp.2d at

475 (citations omitted).  Generally, courts in this Circuit have found that a warranty failed its essential purpose where the defendant unreasonably delayed in effectuating a repair or repeatedly attempted repairs and was unsuccessful.  *See*, *e.g.*, *Id.* ("[A] buyer can lose a substantial benefit of the bargain where the warrantor is unable to repair the item or does not repair the defect within a reasonable time."); *Waverly Props., LLC v. KMG Waverly, LLC*, 824 F. Supp.2d 547, 558-59 (S.D.N.Y. 2011) (holding that defendant's limited remedy plan had failed its essential purpose where construction defects of apartment unit were not remedied until after plaintiff had sold the unit); *Freidman*, 2009 WL 454252, at *3 (holding that plaintiffs adequately pled that warranty failed essential purpose where they alleged that they "attempted several rounds of repair that were ineffective[]"); *Cf.*, *Leonard v. Tollycraft Corp.*, 1989 WL 1128247, at *7 (S.D.N.Y. Oct. 19, 1989) (where it was "not [the] case [that] the manufacturer repeatedly attempted repairs and was unsuccessful . . . [or that] the manufacturer unreasonably delayed in seeking to effect repairs[,]" limited remedy had not failed its essential purpose) (citations omitted).

Here, Plaintiff's conclusory allegation that Defendant failed to correct the Defect "within a reasonable time," is not supported by any factual allegations.  Am. Compl. ¶ 90.  Plaintiff simply alleges that he experienced the Defect, and "[a]fter that," he had his vehicle repaired at the dealership.  *Id.* at ¶¶ 50-51.  Nor does Plaintiff allege that Defendant made numerous unsuccessful attempts to repair his vehicle while it was under the Warranty.  Rather, during the warranty period, Plaintiff needed to repair his vehicle on only one occasion and did get it repaired at no cost.  Thus, the Warranty did not fail its essential purpose.  *See*, *Solomon v. Canon USA, Inc.*, 31 Misc.3d 30, 33 (App. Term, 1st Dep't. 2010) (holding that warranty did not fail its essential purpose where defendant repaired product during warranty coverage period).  Accordingly, Defendant did not breach the Warranty with respect to the first time that Plaintiff experienced the Defect.  *See*, *Dixon*

*v. Ford Motor Co.*, 2015 WL 6437612, at *3 (E.D.N.Y. Sept. 30, 2015) (dismissing breach of express warranty claim where plaintiff failed to allege that defendant failed to fix defect in plaintiff's vehicle).

Plaintiff's claim based on the second and third time that the Defect occurred similarly fails. By the second time that Plaintiff experienced the Defect, his vehicle had approximately 71,524 miles on the odometer, and both the Bumper-to-Bumper Coverage and the Powertrain Coverage had expired. *See*, Am. Compl. ¶ 52. Therefore, Defendant was not required to provide free repair services under the Warranty for the second or third time that Plaintiff experienced the Defect. *See*, *Chiarelli v. Nissan N. Am., Inc.*, No., 2015 WL 5686507, at *6-7 (E.D.N.Y. Sept. 25, 2015) (noting that an express warranty "does not cover repairs made after the applicable time or mileage periods have elapsed[]" and dismissing breach of express warranty claim where plaintiffs sought repair after the time and mileage limitations of the applicable warranty had expired) (internal quotation marks and citation omitted).

In an effort to bypass the Warranty's time and mileage limitations, Plaintiff alleges that the Warranty's limitations are "unconscionable and unenforceable." Am. Compl. ¶¶ 12, 38, 91-93. New York's Uniform Commercial Code provides that courts may refuse to enforce a contract or any clause of the contract that it finds to "have been unconscionable at the time it was made[.]" U.C.C. § 2-302(1). Plaintiff contends that Defendant had prior knowledge of the Defect, thereby rendering the Warranty unconscionable and unenforceable, and asks the Court to strike its time and mileage limitations. *See*, Pl. Opp'n, 17-19.

"Courts have routinely rejected express warranty claims premised on" Plaintiff's theory. *Chiarelli*, 2015 WL 5686507, at *7 (citations omitted). Indeed, "[t]he case law is clear . . . that a defendant's knowledge of a latent defect does not render unconscionable a limitation contained in

an express warranty." *Id.* (citation omitted).  The Second Circuit directly addressed the flaw in Plaintiff's reasoning in *Abraham v. Volkswagen of America, Inc*., 795 F.2d 238 (2d Cir. 1986). There, the court rejected the plaintiffs' argument that "a defect discovered outside the time or mileage limits of the applicable written warranty, but latent before that time, may be the basis of a valid express warranty claim if the warrantor knew of the defect at the time of sale." *Id.* at 249. The court explained:

> [V]irtually all product failures discovered in automobiles after expiration of the warranty can be attributed to a "latent defect" that existed at the time of sale or during the term of the warranty.  All parts will wear out sooner or later and thus have a limited effective life. Manufacturers always have knowledge regarding the effective life of particular parts and the likelihood of their failing within a particular period of time.  Such knowledge is easily demonstrated by the fact that manufacturers must predict rates of failure of particular parts in order to price warranties and thus can always be said to "know" that many parts will fail after the warranty period has expired.  A rule that would make failure of a part actionable based on such "knowledge" would render meaningless time/mileage limitations in warranty coverage.

*Id.* at 250.

Plaintiff's attempt to distinguish the facts of his case from *Abraham* is unavailing.  Plaintiff contends that, unlike the plaintiffs in *Abraham*, he alleges that a gross disparity in bargaining power existed between Defendant and the putative class.  *See*, Pl. Opp'n, 18-19; *See also*, Am. Compl. ¶ 93.  Plaintiff relies primarily *on Carlson v. General Motors Corp.*, 883 F.2d 287 (4th Cir. 1989) to support this contention.  In *Carlson,* the plaintiffs survived a motion to dismiss by alleging that the manufacturer knew about, but did not disclose, inherent defects and, because plaintiffs lacked bargaining power, they had no choice but to accept the terms of the manufacturer's warranty.  *Id.* at 295-96.  However, *Carlson* is not binding on this Court and has been criticized in light of pleading standards subsequently established by the Supreme Court in *Twombly* and *Iqbal*. *See, e.g.*, *Chiarelli*,  2015 WL 5686507, at *7, n. 5 (rejecting plaintiffs' reliance on *Carlson*, noting

that it is not binding in this Circuit, and criticizing its holding); *Alban v. BMW of N. Am.*, 2011 WL 900114, at *9 & n. 8 (D.N.J. Mar.15, 2011) ("[I]n light of [*Twombly*] and *Iqbal*, the Fourth Circuit's logic is no longer persuasive, as conclusory allegations are insufficient to survive a motion to dismiss.").

Plaintiff's conclusory allegation that a large disparity in bargaining power existed between Defendant and the putative class does not satisfy the plausibility standard.  *See*, *Alban*, 2011 WL 900114, at *9 (allegations that plaintiff "had no meaningful choice in determining the time and mileage limitation, and that a gross disparity in bargaining power existed between him and [the defendant]" were "no more than conclusions [that] are not entitled to the assumption of truth[,]" and, therefore, insufficient to survive motion to dismiss) (internal quotation marks and citations omitted); *Romig v. Pella Corp*., 210 F. Supp.3d 826, 835-36 (D.S.C. 2016) (applying New York substantive law and finding conclusory plaintiff's allegation that, because he was an individual and the defendant was a multimillion-dollar corporation, the disparity in bargaining power was "stark[]") (citation omitted).

For the foregoing reasons, the breach of express warranties claim is dismissed.

**B.    Violation of the MMWA**

Plaintiff asserts a cause of action under the MMWA, which "provides a private right of action for a consumer against a manufacturer or retailer who, *inter alia*, fails to comply with the terms of a written or implied warranty." *Jackson v. Eddy's LI RV Ctr., Inc.*, 845 F. Supp.2d 523, 530 (E.D.N.Y. 2012) (citing 15 U.S.C. § 2310(d)(1) (2003)).  To state a claim under the MMWA, a plaintiff plausibly must allege breach of express or implied warranty under state law.  *See*, *Garcia v. Chrysler Grp. LLC*, 127 F. Supp.3d 212, 232 (S.D.N.Y. 2015) (citations omitted).

Plaintiff's MMWA claim fails as a matter of law because, as set forth above, he fails to

plead a cause of action for breach of the Warranty.  *See*, *Chiarelli*, 2015 WL 5686507, at *9 (dismissing MMWA claim where plaintiffs failed to allege breach of express or implied warranty); *Cali v. Chrysler Grp. LLC*, 2011 WL 383952, at *4 (S.D.N.Y. Jan. 18, 2011), *aff'd*, 426 F. App'x 38 (2d Cir. 2011) (same).  Accordingly, the MMWA claim is dismissed.

### C.    Violation of GBL § 349

Plaintiff also asserts a claim pursuant to GBL § 349, alleging that Defendant "knowingly conceal[ed]" the Defect to mislead consumers and that Defendant's deception was material because it concerned "an essential facet of the . . . Vehicles' functionality and safety[,]" which is "information upon which a consumer would be expected to rely on in making a decision [of] whether to purchase, or how much to pay for, the . . . Vehicles."  Am. Compl. ¶¶ 102-03, 105. Plaintiff further alleges that Defendant "engaged in materially misleading deceptive acts and practices by advertising and selling a limited [W]arranty while knowing that significant portions of the damages resulting from the known, but concealed, Defect would not be revealed to the consumer until after coverage expired thereunder." *Id.* at ¶ 108.  Finally, Plaintiff alleges that, in administering the limited Warranty, Defendant engaged in deceptive practices by replacing the Defective Components with other similarly defective parts. *Id.* at ¶ 109.  Thus, Plaintiff alleges two types of deceptive business practices by Defendant:  (1) omissions about the Defect; and (2) misrepresentations and omissions about the Warranty.

GBL § 349 prohibits "'deceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state.'"  *Nick's Garage, Inc. v. Progressive Cas. Ins. Co.*, 875 F.3d 107, 124 (2d Cir. 2017) (quoting N.Y. Gen. Bus. Law § 349(a)).  To state a claim under Section 349, "a plaintiff must allege that a defendant has engaged in (1) consumer-oriented conduct that is (2) materially misleading and that (3) plaintiff suffered injury as a result

of the allegedly deceptive act or practice." *Id.* (internal quotation marks and citation omitted).  A GBL § 349 claim may be premised on a material omission. *Chiarelli*, 2015 WL 5686507, at *11. To survive a motion to dismiss, a plaintiff must allege plausibly "that a significant portion of the general consuming public or of targeted consumers, acting reasonably in the circumstances, could be misled by the relevant statements[]" or omissions.  *Kennedy v. Mondelez Glob. LLC*, 2020 WL 4006197, at *9 (E.D.N.Y. July 10, 2020) (internal quotation marks and citations omitted); *Chiarelli*, 2015 WL 5686507, at *11 (citation omitted).

Defendant does not dispute that it engaged in consumer oriented conduct, *i.e.*, that its conduct had "a broader impact on consumers at large."  *See*, *Koch v. Greenberg*, 626 F. App'x 335, 340 (2d Cir. 2015) (internal quotation marks and citation omitted).  However, Defendant contends that Plaintiff fails to plead the second and third elements necessary to support a GBL§ 349 cause of action.

Defendant contends that Plaintiff fails to allege that Defendant knew of the Defect at the time Plaintiff purchased his vehicle.  *See*, Def. Mem., 12-14.  To succeed on a GBL § 349 claim based on Defendant's purported concealment of the Defect, Plaintiff must allege that Defendant possessed "material information" that was relevant to Plaintiff and the putative class and failed to provide this information.  *See*, *Lebowitz v. Dow Jones & Co.*, 847 F. Supp.2d 599, 605 (S.D.N.Y. 2012), *aff'd sub nom. Lebowitz v. Dow Jones & Co.*, 508 F. App'x 83 (2d Cir. 2013) ("Claims based on omissions are appropriate where the business alone possesses material information that is relevant to the consumer and fails to provide this information.") (internal quotation marks and citation omitted).

Plaintiff alleges that numerous consumers lodged complaints regarding the Defect with the NHTSA, which NHTSA then relayed to Defendant, thereby putting it on notice of the Defect.  *See*,

Am. Compl. ¶ 31.  Most of these complaints were made after September 5, 2017, the date Plaintiff purchased his vehicle.  *See*, *Id.*  Therefore, they do not support a finding that Defendant knew of the Defect before Plaintiff purchased his vehicle.  *Cummings*, 401 F. Supp.3d at 308 (holding that complaints regarding defect, which were dated after plaintiff had purchased vehicle, failed to establish that defendant had knowledge of defect at the relevant time).

Four of the complaints concern the Vehicles and were made prior to Plaintiff's purchase.[3] *See*, Am. Compl. ¶ 31 (report dated November 10, 2016, NHTSA ID 10924061; report dated May 10, 2017, NHTSA ID 10970821; report dated May 11, 2017, NHTSA ID 10978791; report dated June 22, 2017, NHTSA ID 10992345).  Defendant contends that the Court cannot infer "from this miniscule number of purported complaints" that Defendant had knowledge of the Defect.  Def. Mem., 14; Def. Reply, 5.  Yet, Defendant fails to cite any authority requiring a threshold or minimum number of complaints be alleged to support the scienter element.

Defendant relies on cases that are inapposite as the dismissal motions in those cases were granted, not because the plaintiffs had failed to allege that a sufficient number of complaints had been made, but rather because the plaintiffs had not alleged that the defendants had been made aware of the defects through the complaints.  *See*, Def. Mem., 14.  In *Schechter v. Hyundai Motor America*, 2019 WL 3416902 (D.N.J. July 29, 2019), *reconsideration denied*, 2020 WL 1528038 (D.N.J. Mar. 31, 2020), the court found that the plaintiff failed to establish that the defendants were aware of consumer complaint consumers posted on the NHTSA's website because he did not allege that the defendants monitored the NHTSA's website or that NHTSA had informed the defendants about the complaints.  *Id.* at *6.  Similarly, in *Berenblat v. Apple, Inc.*, 2010 WL

---

[3] One of the complaints that pre-dates Plaintiff's purchase relates to a 2013 Malibu, which is not included in the putative class of Vehicles, and, therefore, the Court does not consider it.  *See*, Am. Compl. ¶ 31 (report dated November 3, 2015 NHTSA ID 10788102).

1460297 (N.D. Cal. Apr. 9, 2010), the court found that consumers' complaints regarding a defect posted on the defendant's website were insufficient to show that the defendant had knowledge of the defect. *Id.* at \*9. Finally, in *Resnick v. Hyundai Motor America, Inc.*, 2017 WL 6549931, (C.D. Cal. Aug. 21, 2017), the court found that the plaintiffs had failed to allege the defendants' knowledge of the purported defect. *Id.* at \*13. Here, by contrast, Plaintiff alleges that the consumer complaints filed with the NHTSA "are delivered to [Defendant], reviewed by [Defendant], and analyzed by [Defendant's] engineers." Am. Compl. ¶ 31.

Defendant's reliance on *Stevenson v. Mazda Motor of America, Inc.*, 2015 WL 3487756 (D.N.J. June 2, 2015) also is unavailing. *See*, Def. Mem., 14. In that case, the claim made under the New Jersey Consumer Fraud Act, unlike GBL § 349, must meet the heightened pleading standards of Fed. R. Civ. P. 9(b). *Id.* at \*4. Applying the heightened pleading standard, the court held that "consumers cannot rely on general allegations that a manufacturer had received complaints about similar makes and models of vehicles." *Id.* at \*6. The *Stevenson* court's finding based on a statute and pleading standard that are inapplicable to this case is unpersuasive.

The Court finds Plaintiff's allegations regarding the complaints sufficiently plead Defendant's knowledge, especially when paired with Plaintiff's additional allegations that Defendant knew about the "material, design, and manufacture of the [Defective Components]" and had "a testing and validation process [that] would discern the Defect," Am. Compl. ¶¶ 25, 33. *See*, *Marshall v. Hyundai Motor Am.*, 51 F. Supp.3d 451, 460 (S.D.N.Y. 2014) (allegations that defendants had knowledge of defect through "pre-release testing, early service maintenance analysis and reports and data; knowledge and examination of the specifications for the various [purportedly defective parts]; knowledge of materials; and knowledge through customer complaints to [defendant] directly and through online consumer websites[]" provided "adequate

detail" to satisfy pleading requirements for a GBL § 349 claim).  Accordingly, Plaintiff plausibly alleges that Defendant knew of the Defect at the time that Plaintiff purchased his vehicle.

Neither party addresses Defendant's alleged warranty misrepresentations.  The Court finds that Plaintiff has not pled adequately that Defendant knew the Defect would not be revealed until after the Warranty's coverage expired or that Defendant deceptively administered the Warranty by replacing the Defective Components with other defective parts.  Accordingly, the GBL § 349 claim as to purportedly deceptive practices involving the Warranty is dismissed.

Defendant also contends that Plaintiff fails to state a GBL § 349 claim because he fails to allege that he suffered an injury as a result of Defendant's purported misrepresentations.  *See*, Def. Mem., 14-16.  For the same reasons discussed above with respect to standing, Defendant's argument is without merit.  Plaintiff alleges three forms of injury arising out of Defendant's conduct:  (1) overpayment for his vehicle based on Defendant's omissions regarding the Defect; (2) out-of-pocket expenses to repair the Defect; and (3) lost personal time to repair the Defect. Each of these satisfy the injury requirement for a GBL § 349 claim.  *See*, *Kacocha v. Nestle Purina Petcare Co.*, 2016 WL 4367991, at *14 (S.D.N.Y. Aug. 12, 2016) (holding that the plaintiff's allegations that he had paid a premium for a defective product, which he would not have paid absent the defendant's misrepresentations, was sufficient to establish injury for purposes of standing and GBL § 349 claim); *Kommer v. Ford Motor Co.*, No. 2017 WL 3251598, at *4 (N.D.N.Y. July 28, 2017) ("Incurring out-of-pocket expenses is a recognized injury under [GBL § 349].") (citations omitted); *In re Gen. Motors LLC Ignition Switch Litig.*, 339 F. Supp.3d at 329 (holding that allegation of lost time established injury for purposes of GBL § 349).  Accordingly, Defendant's motion to dismiss Plaintiff's GBL § 349 claim for failure to allege an injury is denied.

Finally, Defendant seeks dismissal claiming the Warranty expressly acknowledges that

defects may exist in the Vehicle and, thus, as a matter of law, Defendant's failure to disclose the Defect is not a deceptive practice. *See*, Def. Mem., 16-17. However, "[c]ourts addressing omissions-based GBL claims against vehicle manufacturers . . . have rejected this argument." *Chiarelli*, 2015 WL 5686507, at *12 (E.D.N.Y. Sept. 25, 2015) (collecting cases). Indeed, courts have rejected the New York Supreme Court case upon which Defendant relies, *Against Gravity Apparel, Inc. v. Quarterdeck Corp.*, 267 A.D.2d 44 (1st Dep't. 1999). *See*, *In re OnStar Contract Litig.*, 600 F. Supp.2d 861, 870 (E.D. Mich. 2009) (noting that *Against Gravity*, "which[,] due to its length[,] provides little analysis," was not persuasive authority upon which to base dismissal of plaintiff's GBL § 349 claim); *In re Gen. Motors Air Conditioning Mktg. & Sales Practices Litig.*, 406 F. Supp.3d 618, 649 (E.D. Mich. 2019), *reconsideration denied*, 2019 WL 5696697 (E.D. Mich. Nov. 4, 2019) (same). Accordingly, Defendant's motion to dismiss Plaintiff's GBL § 349 claim on the basis of the Warranty's express acknowledgment of defects is denied.

### D.    Unjust Enrichment

Plaintiff also asserts a cause of action for unjust enrichment, alleging that by selling the Vehicles with the Defective Components, Defendant was enriched unjustly at the expense of Plaintiff and the putative class. *See*, Am. Compl. ¶¶ 118-23. To state a claim for unjust enrichment, a plaintiff must allege that: "(1) the defendant was enriched, (2) at the expense of the plaintiff, and (3) that it would be inequitable to permit the defendant to retain that which is claimed by the plaintiff." *Agerbrink v. Model Serv. LLC*, 155 F. Supp.3d 448, 458 (S.D.N.Y. 2016) (internal quotation marks and citations omitted).

Unjust enrichment is a "quasi-contract claim[]" that exists only "in the absence of any agreement." *Beth Israel Med. Ctr. v. Horizon Blue Cross & Blue Shield of N.J., Inc.*, 448 F.3d 573, 586 (2d Cir. 2006) (internal quotation marks, citation, and emphasis omitted). Thus, where

an express warranty exists, an unjust enrichment claim is untenable.  *See*, *Brady v. Basic Research, L.L.C.*, 101 F. Supp.3d 217, 237-38 (E.D.N.Y. 2015) ("Under New York law, it is well settled that where a valid warranty governs the subject matter of a suit, a plaintiff cannot recover in quasi-contract, and it is appropriate to dismiss an unjust enrichment claim.") (internal quotation marks, alteration, and citation omitted); *Marshall*, 51 F. Supp.3d at 471 ("[I]n cases involving allegedly defective products, express warranties cover the subject matter at issue and an unjust enrichment claim does not lie.") (internal quotation marks and citation omitted).  Here, there is no dispute that the Warranty governs the terms of the parties' dispute concerning the Defect.  Accordingly, the unjust enrichment claim is dismissed.

## IV.    Defendant's Motion to Dismiss the Putative Nationwide Class Claims

Defendant seeks to dismiss the putative nationwide class claims claiming the Court lacks personal jurisdiction over Defendant as these claims relate to non-New York putative class members.  *See*, Def. Mem., 21-22.  Defendant is not subject to general personal jurisdiction in New York because it is a Delaware limited liability company, with its principal place of business in Michigan, *See*, Am. Compl. ¶ 19.  *See*, *Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014) ("With respect to a corporation, the place of incorporation and principal place of business are paradigm bases for general jurisdiction.") (internal quotation marks, citation, and alterations omitted).  Thus, personal jurisdiction exists over Defendant only to the extent that specific jurisdiction exists, meaning that the claims asserted in this case "arise out of or relate to" Defendant's contacts with New York.  *Bristol-Myers Squibb Co. v. Superior Court of California, San Francisco Cnty.*, 137 S.Ct. 1773, 1780 (2017) (internal quotation marks, citations, and alterations omitted).

Defendant contends that the Supreme Court's holding in *Bristol-Myers Squibb* mandates dismissal of Plaintiff's putative nationwide class claims.  *See*, Def. Mem., 21-22.  In *Bristol-Myers*

*Squibb*, the Supreme Court held that, under the Fourteenth Amendment, state courts lack personal jurisdiction for claims by out-of-state plaintiffs against out-of-state defendants that have no connection to the forum state. *See*, 137 S.Ct. at 1781-82. However, the Court left open the question whether the same logic would extend to federal courts under the Fifth Amendment, *Id.* at 1783-84, as well as whether its holding applied to nationwide class actions. *Id.* at 1789, n.4 (Sotomayor, J., dissenting). Some district courts have declined to extend *Bristol-Myers Squibb* to preclude federal jurisdiction over out-of-state claims. *See*, *Campbell v. Freshbev LLC*, 322 F. Supp.3d 330, 337 (E.D.N.Y. 2018) (collecting cases). At this juncture, the Court need not determine the applicability of *Bristol-Myers Squibb* because Plaintiff has not moved to certify a nationwide class. *Id.* (deferring on deciding applicability of *Bristol-Myers Squibb* to putative class action where plaintiff had not moved to certify class). Accordingly, Defendant's motion to dismiss Plaintiff's putative nationwide class claims is denied as premature.

## CONCLUSION

For the reasons set forth above, Defendant's motion to dismiss is granted only as to the requests for declaratory and injunctive relief and claims for breach of express warranty, MMWA violations, unjust enrichment, and GBL § 349 deceptive practices involving the Warranty, which are dismissed, and denied in all other respects. Defendant's motion to dismiss Plaintiff's putative nationwide class claims pursuant to Fed. R. Civ. P. 12(b)(2) is denied as premature.

SO ORDERED.

Dated:  Brooklyn, New York
          September 30, 2020

                                        _____/s/_____
                                             DORA L. IRIZARRY
                                        United States District Judge

30